# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-664V

|  |  |
|---|---|
| LISA BREWER,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br><br>Filed: July 7, 2025 |

*Courtney C. Jorgenson*, Siri & Glimstad LLP, Phoenix, AZ, for Petitioner.

*Tyler King*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On January 12, 2021, Lisa Brewer filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of an influenza ("flu") vaccine she received on October 21, 2020, she suffered a shoulder injury related to vaccine administration ("SIRVA"), a Vaccine Table injury. Petition (ECF No. 1) at 1.

The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. For the reasons discussed below, I find that Petitioner is entitled to compensation for her SIRVA.

---

[1] Because this ruling and decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I. **Procedural History**

This claim was initiated on January 12, 2021, and relevant medical records were filed thereafter. ECF Nos. 7, 15, 20. Respondent filed a status report on April 19, 2023, indicating that he was amenable to informal resolution in this case. ECF No. 38. However, on June 12, 2023, Petitioner filed a status report indicating that she had sent Respondent a demand but had yet to hear back with a counteroffer. ECF No. 42. Petitioner also filed the instant Motion for Decision on the Record on the same day. ECF No. 41.

On June 27, 2023, I issued a scheduling order, noting that Petitioner's Motion was premature because the parties had not had a meaningful opportunity to engage in settlement negotiations. ECF No. 44. On August 18, 2023, Petitioner filed a status report representing that the parties had reached an impasse in their settlement discussions. ECF No. 46. On October 13, 2023, Respondent filed his own brief responding to Petitioner's Motion as well as his contesting Rule 4(c) Report. ECF No. 47-48. Petitioner filed her Reply brief on October 17, 2023. ECF No. 49. This matter is now ripe for disposition.

II. **Evidence**

A. *Medical Records*

On October 21, 2020, Petitioner received a flu vaccine in her right deltoid. Ex. 5 at 3-4. At the time of vaccination, Petitioner was a fifty-six-year-old female with no history of right shoulder pain or injury. On October 26, 2020 (five days post vaccination), Petitioner visited her primary care provider, Stephen Cullen, M.D., with a primary complaint of "mouth lesions". Ex. 2 at 23-25. The records from that visit do not reflect any complaint of shoulder pain.

On November 19, 2020, Petitioner had a telehealth exam with Gretchen Dixon, MS PAC. Ex. 2 at 30-34. Petitioner complained of shoulder pain in both shoulders. *Id.* at 31. Petitioner stated her left shoulder pain began "while doing yard work in September of 2020," and her right shoulder "has been bothering her since she got her flu shot and that it was placed high on her shoulder." *Id.* PA Dixon prescribed oral steroids and referred Petitioner to physical therapy ("PT"). *Id.* at 33.

On November 25, 2020, Petitioner underwent an initial PT evaluation for bilateral shoulder pain. Ex. 4 at 1-2. The records mention that Petitioner claimed her left shoulder was injured due to cutting wood, while her right shoulder pain began after her vaccination. *Id.* at 1. The primary concern, in the medical records, was listed as left shoulder pain. *Id.*

On December 28, 2020, during a PT session, Petitioner stated she was tolerating therapy well with less pain since beginning therapy. Ex. 4 at 15. Petitioner was noted as having an upcoming appointment with an orthopedist. *Id.* On December 30, 2020, Petitioner was examined by orthopedist Robert Crawford, M.D., due to bilateral shoulder pain. Ex. 3 at 2-13. Petitioner noted her pain started about four months ago. *Id.* at 3. Petitioner stated she hurt the left shoulder while cutting wood back in August and her right shoulder "has been bothering her since a flu shot about two months ago." *Id.* Upon physical exam, Petitioner was observed to display abnormal range of motion in both shoulders and decreased strength. *Id.* at 11. Dr. Crawford administered steroid injections to Petitioner's bilateral shoulders. *Id.*

On January 20, 2021, during her ninth PT session, Petitioner reported her right shoulder "feels ok and left shoulder catching." Ex. 4 at 24. This was the last record regarding a PT visit. On April 28, 2021, six months post vaccination, Petitioner was examined by Dr. Crawford, due to right shoulder pain. Ex. 6 at 2-16. Upon physical exam, Dr. Crawford noted abnormal range of motion ("ROM") in Petitioner's right shoulder. *Id.* at 6. Dr. Crawford's diagnosis was a strain of the right supraspinatus tendon. *Id.* at 10. Petitioner was given instructions for a home exercise program. *Id.* at 10-12. On May 6, 2021, Petitioner was examined by Jennifer L. Mathias, APRN, due to a lump on her left arm. Ex. 9 at 30-33. There was no mention of shoulder pain in the records for this visit.

### B. *Witness Statements*

Ms. Brewer submitted a sworn statement on July 13, 2021. ECF No. 12. In it, she represents that at the time she received the flu vaccine in her right arm, she noticed the injection seemed too high on her arm and that she felt instant pain. *Id.* ¶ 2. She states that she attempted to self-treat her symptoms with heat and ice and over-the-counter pain medication, but that this was unsuccessful. *Id.* ¶ 4. She then describes how she was prescribed oral steroids and referred to PT, and ultimately received two steroid injections, one in each arm. *Id.* at ¶¶ 6-7. Finally, she notes that of April 28, 2021, her treating orthopedist believed that additional steroid injections and more PT would help her right shoulder. *Id.* ¶ 10.

## III. Parties' Arguments

Petitioner argues that her medical records and affidavit support her claim that her shoulder pain began withing the 48 hours of receiving the vaccination, and that all other elements of a Table SIRVA are present here. ECF No. 41 at 4-5. Respondent argues that Petitioner cannot maintain a Table SIRVA claim because she has failed in providing preponderant evidence that her right shoulder pain began within 48-hours of vaccination.

Resp. at 5-6. Specifically, Respondent points to Petitioner's delay in seeking treatment for approximately one month, that five days after vaccination Petitioner had a medical appointment during which she did not mention her right shoulder pain, and that when she did report her right shoulder pain, she did not place a specific timeframe for her pain onset, only that it occurred after her flu vaccination in October. *Id.*

## IV.  **Applicable Law**

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

4

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## V.     Analysis

### I.     Fact Findings – Onset and Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation, or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical

6

professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that the evidence preponderates in favor of the conclusion that Petitioner has satisfied the Qualifications and Aids to Interpretation ("QAI") requirements for a Table SIRVA.

#### 1. Petitioner has no Prior Right Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). In this case, the medical records do not indicate that Petitioner suffered any prior right shoulder pain issues, and Respondent does not

contend that Petitioner has failed to carry her burden with respect to this requirement. Accordingly, the record allows me to find that Petitioner had no prior right shoulder condition or injury.

### 2. Pain Occurs with the Specified Timeframe (Onset)

A SIRVA claimant must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain occurred within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

Respondent's first argument against onset is that Ms. Brewer did not report her shoulder injury to a medical provider until approximately one month after vaccination, despite having a medical appointment scheduled *five days* after. Resp. at 5. But there are a variety of explanations for why an individual may delay medical treatment - especially for a possible vaccine injury to the shoulder. Many individuals expect, and are advised, that there will be pain at the injection site after vaccination. This can lead to a delay in seeking treatment. An individual's particular threshold for pain, or avoidance of doctors, are other reasons.

In this case, a one-month delay in seeking treatment is wholly unremarkable. Petitioner attested tin her sworn statement that she believed that she would be able to resolve her pain on her own with the use of heat, ice, and over-the-counter pain medication. Ex. 12 at ¶ 4. It is also not unreasonable that Ms. Brewer would not bring up the recent onset of right shoulder pain during her October 26, 2020, medical examination before Dr. Cullen. The reason for this visit is noted to be "mouth lesions," and the record describes Ms. Brewer's concern with face and lip sores that were getting worse, possibly due to having to wear a mask during her shift as a waitress. Ex. 2 at 23.

Respondent's second argument against onset is that when Ms. Brewer did seek treatment for her right shoulder pain, she did not specifically indicate that pain began within 48-hours of the vaccination, but rather only that it began generally *after* her October vaccination. Resp. at 6. Respondent contends this situation is similar to the one in *McMullen v. Sec'y of Health & Hum. Servs.*, where a petitioner's Table SIRVA claim was dismissed because the medical records preponderated a finding of a more gradual onset of pain. *Id.* at n.3 (citing *McMullen*, No. 20-482V, 2023 WL 3409215 (Fed. Cl. Spec. Mstr. Jul. 28, 2022).

Although the records in this case may not place onset within 48-hours with optimal specificity, the instant case is still distinguishable from the factual circumstances in *McMullen.* What ultimately proved to be fatal to the *McMullen* petitioner's claim was that

the records showed that the petitioner had some initial hesitancy regarding the cause of his pain, and that several medical records placed onset at a shorter time period than would have been had the symptoms first started within 48 hours. *Id.* at *5. Thus, although some records referred to pain "since or post status" vaccination, the vagueness of those records was not enough to overcome other records which described a more gradual onset of shoulder pain. *Id.*

Here, by contrast, all the records describe Ms. Brewer reporting her pain as existing since her vaccination, and attributing her pain to that specific event. For example, her first appointment seeking treatment for her right shoulder pain was on November 29, 2020, and the records from that visit state: "Pt states her right shoulder has been bothering her since she got her flu shot. States that 'it was placed too high on her shoulder'" and "right shoulder pain d/t flu shot x 1 month. Pt feels shot was placed too high." Ex. 2 at 30-31. On her initial evaluation for PT on November 25, 2020, the record states "Flu shot in right shoulder caused incredible pain in right shoulder." Ex. 4 at 1. When she was first examined by an orthopedist on December 30, 2020, the record from that visit indicates "right shoulder has been bothering her since a flu shot about 2 months ago." Ex. 3 at 3. Moreover, there are not any records, such as in *McMullen,* which attribute her right shoulder pain to anything other than her vaccination, or the onset of her pain as a gradual occurrence.

Overall, I find that the totality of the evidence preponderantly supports the conclusion that Ms. Brewer's shoulder pain occurred within 48 hours of her vaccination, as alleged.

### 3. Petitioner's Pain and Limited Range of Motion was Limited to Her Right Shoulder

The QAI for a SIRVA claim requires the petitioner to demonstrate that "pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii) (QAI criteria)). It does not appear that Respondent is contesting this criterion, however, and there is nothing in the submitted record to indicate that Petitioner's symptoms were not limited to her right shoulder. Petitioner has consistently complained of right shoulder pain and loss of ROM since receiving the flu vaccination. Although Petitioner simultaneously complained of left shoulder pain and received treatment for both shoulders, it is undisputed that Petitioner injured her left shoulder while chopping wood prior to receiving the flu vaccine in October 2020. Petitioner at no time indicated that the two injuries were related in any way and none of Petitioner's treating providers ascribed Petitioner's left shoulder pain to her flu vaccination. Rather, it appears Petitioner is the victim of the unfortunate circumstances

of having suffered two different shoulder injuries simultaneously. Accordingly, Petitioner has satisfied the third QAI requirement.

### 4. There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Once again, there is no evidence in the record to suggest that another condition or abnormality could be the cause of Petitioner's right shoulder injury and Respondent does not offer any argument to the contrary. Accordingly, Petitioner has satisfied the fourth QAI requirement.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Ms. Brewer received a flu vaccine intramuscularly in her right shoulder on October 21, 2020. Ex. 5 at 3-4; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Petition at 4; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's right shoulder pain likely occurred within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). I have also found that Petitioner's pain and reduced range of motion attributable to receiving the flu vaccination was limited to her right shoulder. 42 C.F.R. § 100.3(c)(10). Finally, I find that there was no condition or abnormality that would explain Petitioner's symptoms after vaccination. *Id.* Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of their shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Starting from October 23, 2020 (48 hours after vaccination), the records undoubtedly demonstrate that

Ms. Brewer suffered the residual effects of her shoulder injury for more than six months. *See, e.g.*, Ex. 6 at 3 (record from Dr. Crawford, an orthopedist, in which Petitioner reported 7/10 pain in her right shoulder, that cortisone injections were beneficial but the pain and started to return, and that she had been having difficulty sleeping, and noting that her range of motion was still abnormal).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find Petitioner is entitled to compensation. The issuance of a damages order will follow the filing of this decision.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
